THE STATE, EX REL. THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, PROSECUTORS, v. WILLIAM T. UTTER, RECEIVER OF TAXES OF THE CITY OF NEWARK.

1. A mutual insurance company, incorporated by the legislature without any capital stock, cannot create a capital stock by virtue of a by-law passed for that purpose, and thereby withdraw from the class of mutual corporations without a capital stock, to which it belongs.

2. Commissioners of appeal are authorized by law, when any persons or corporations are assessed at too low a rate, to make such additional assessment as shall be agreeable to the principles of justice. *Held*— That where the commissioners added a certain sum to the assessment, without specifying the amount of tax to be paid thereon, it was within the meaning of the law.

On error to the Supreme Court.

The Mutual Benefit Life Insurance Company, doing business in the city of Newark, were assessed for taxes, in the year 1862, upon the amount of $665,300, which they claimed to be the balance liable to taxation, including real estate. Upon complaint made to the commissioners of appeal, the parties were heard, and the commissioners, after due examination, adjudged that the said company were assessed at too low a rate, they being now assessed for the sum of $665,300 only, besides their real estate and United States securities and New Jersey state bonds, and that they ought, agreeably to the principles of justice, to be assessed in addition thereto for the sum of $3,338,882.01, and that the last-named sum ought to be added to the assessment of said company.

This adjudication was afterwards removed, by *certiorari*, to the Supreme Court for review.

The principal reason assigned in that court for setting aside the action of the commissioners of appeal was, that "the said company were assessed for the whole amount of their assets without any deduction for liabilities; whereas, the said company had a capital stock, and ought only to have been assessed the amount of such capital stock, together with their accumulated surplus, by which they would have been allowed for their liabilities."

The Supreme-Court affirmed the decision of the commissioners.

See case and opinion of the court, 4 *Vroom* 183.

This writ of error was brought to reverse the judgment of the Supreme Court, and the following errors have been assigned:

*First.* That the said prosecutors, the Mutual Benefit Life Insurance Company, were not liable to the additional tax attempted to be imposed upon them by the commissioners of appeal of the city of Newark, in November, 1862.

*Second.* That the said company, in the year 1862, were

State, ex rel. Mutual Benefit Life Ins. Co., pros., v. Utter, Receiver, &c.

liable to taxation as a corporation having capital stock, and not otherwise.

*Third.* That the action of the commissioners of appeal was insufficient, illegal, and of no validity to subject said prosecutors to the payment of any additional tax, beyond that imposed by the assessor and paid by said company.

*Fourth.* That the said Supreme Court, for the above reasons, and for the reasons assigned by said prosecutors, and returned in this cause to said court, erred in holding that said assessment should be confirmed.

The case was argued by—

*Joseph P. Bradley,* for plaintiffs in error.

*John P. Jackson,* for defendant.

VAN SYCKEL, J. The writ of error in this case subjects to review the judgment of the Supreme Court, affirming the adjudication of commissioners of appeal in cases of taxation, who, by virtue of the second section of the act of March 9th, 1848, (*Nix. Dig.* 945*) added to the assessment of the relators, for the year 1862, the sum of $3,338,882.

Whether the increase was made upon a correct basis depends upon the question whether this company was a private corporation with a capital stock, within the meaning of the act of March 28th, 1862, (*Laws of 1862, p.* 349,) which provides that all private corporations are to be assessed at the full amount of their capital stock paid in and accumulated surplus; and such as have no capital stock shall be assessed for the full amount of their property and valuable assets, without any deduction for debts or liabilities, and that persons holding policies of insurance in any mutual life insurance company which shall be taxed by virtue of this section, shall not be assessed on their personal estate for the value of such policies.

That this company, in its creation, was a mutual com-

*Rev., p.* 1149, § 56.

pany, without a capital stock, is admitted. On the 28th of April, 1862, it attempted to create a capital stock by operation of its own by-law, and it is insisted that, by virtue of this scheme, it is withdrawn from the class of mutual corporations without a capital stock, to which it before belonged.

That joint stock companies have long existed in England, and that they may exist here without legislative grant, is undeniable. There is nothing which forbids an association of individuals to form a joint stock company and act within certain limits, but they do not possess the attributes of a corporation. They are without perpetual succession; they are subject to personal liability, and their stock is not transferable without the consent of the members. The members of this corporation might form themselves into a joint stock company, without a charter from the legislature for that purpose, but it is clear that such stock would be the stock of the association of individuals, and not the stock of the Mutual Benefit Life Insurance Company.

It is difficult to conceive how this corporation, in its legal unity, could become a joint stock company by its own act, and blend its self-constituted properties with its corporate existence. If there is any virtue in this proceeding, there has been a vast deal of unnecessary legislation. If the peculiar alchemy with which a skillful hand touched this institution, in anticipation of a visit from the assessor, transferred it to the list of stock companies, sums aggregating over $3,000,000 would have been assessable in the hands of individual policy holders. It is not pretended that such individuals insisted that the assessor should not omit these values in rating them. Had there been, as to this, double taxation, contrary to the express words of exclusion, this court would extend the necessary relief in a case properly submitted.

It is our duty to construe the words of the law of 1862 according to their ordinary and usual acceptation. The well-understood meaning, both by the court, the bar, and the law-making power, of the term stock company, as distinguished from mutual company, is a company with a capital

stock, created by express legislative grant. That they are used in that sense in this act is manifest from the exemption given to the policy holder. It would require very strong and unequivocal words of legislation to induce this court to hold that this company has a charter so elastic that they can at will enlarge their capital indefinitely, and with the same facility reduce it, or, at their pleasure, pass from a stock to a mutual company. If the power claimed exists in this case, it inheres in every other mutual company, and thus the operation of the tax laws of the state would depend not on legislative action, but the unrestrained will of those to be affected by it.

The word stock in the seventh section of their charter, upon which the relators attempt to rest a legislative grant to issue capital stock, is used in that section to signify assets.

But if this by-law had effected this radical change in the character of the prosecutors, the result would be the same. The company must then be taxed at the full amount of its capital stock and its accumulated surplus.

The term accumulated surplus, in its application to stock companies, is well understood to refer to the fund they have in excess of their capital and liabilities. Applying this definition to the relators will not ease them of the burthen imposed.

They put their capital stock at $665,300, in addition to which they have assets to the value of $3,338,882, over and above all liabilities except their liabilities to themselves. They cannot, in the true sense of the word, be said to be indebted at all. They owe themselves this large sum of money, and may fairly be held to have this fund as an accumulated surplus within the meaning of the legislature.

The reverse would be true if it was, in the strict sense, a stock company with this reserve, to meet outstanding policies. Exemption from taxation of the assets of this company, which are in excess of $4,000,000, would be manifestly unjust. These assets are made up of the aggregate value of the several policies held by its members.

State, ex rel. Mutual Benefit Life Ins. Co., pros., v. Utter, Receiver, &c.

By express provision of the act of 1862, persons holding such policies could not be assessed for their value, and if the company cannot be assessed, a new mode of putting property beyond the reach of the tax-gatherer has been discovered. The legislature withdrew the value of the policy from taxation in the hands of the policy holder, upon the theory that they had taxed the company.

This company was subject to be assessed as a corporation without a capital stock, and therefore the basis upon which the assessment proceeded was correct. The question remains whether the proceedings of the commissioners of appeal are valid. That as a tribunal exercising a special statutory jurisdiction, they must strictly pursue their authority is admitted. That they have done so is denied by the relators.

The act of March 9th, 1849, (*Nix. Dig.* 945, *pl.* 57,*) provides that where any person or corporation shall be assessed at too low a rate, the commissioners of appeal shall make such addition to the assessment as shall be agreeable to the principles of justice.

The error assigned is, that their adjudication that the sum of $3,338,882 be added to the assessment, without specifying the amount of tax to be paid thereon, is not, within the meaning of the law, an addition to the assessment.

The term " rate " may apply either to the percentage of taxation, or to the valuation of property ; in either case the commissioners have jurisdiction.

Rate, in Cunningham's Law Dictionary, is said to be " a valuation of every man's estate."

The complaint to the commissioners was of diminution in the valuation of taxable property. Did the commissioners, by the correction of that error, discharge the 'duty imposed upon them by the statute ?

The obligation was to make a just addition to the assessment.

The term assessment is used repeatedly in the tax laws, with different significations. Sometimes it is employed to express the amount of tax, and at other times the valuation

*Rev., p. 1149, § 56.

State, ex rel. Mutual Benefit Life Ins. Co., pros., v. Utter, Receiver, &c.

of taxables.  *Nix. Dig.* 952, *pl.* 90, 91, and 92;* *Same,* 946, *pl.* 60,† and other sections to which reference will readily be made.

The word assessment thus being used in two senses, this court has the right, and it is their pleasure to adopt that signification which will sustain the action of the commissioners of appeal, in a case where its operation, as has been remarked, is eminently just.

The judgment of the Supreme Court must be affirmed.

*For affirmance*—THE CHANCELLOR, BEDLE, DEPUE, SCUDDER, VAN SYCKEL, CLEMENT, OGDEN, VAIL, WALES.  9.

*For reversal*—None.

The following is a copy of the by-law above referred to:

WHEREAS, It is desirable that in addition to the strict mathematical amount of reserve fund set apart and appropriated for the payment of the policies of this company, there should be commensurate capital to meet any unforeseen epidemics or other contingencies that may at any time occur; *and whereas,* the amount of $200,000 directed by the thirty-fifth by-law to be kept entire in addition to the reserve fund for the purposes above named, being fixed in amount, does not keep pace with the increased liabilities of the company; *and whereas,* it is equitable and just that the parties insured should all contribute their *pro rata* amount to the establishment of such capital stock as may be created for their mutual protection and safety; therefore—

*Section 1.* It is hereby ordained and declared, that in lieu of the said reserve of $200,000, a capital stock for the above purposes be and is hereby created, and that the amount of the first payment made or to be made on every policy of insurance for life issued by this company be, and the same is hereby constituted and set apart as such capital stock, and that each person assured and so paying the same, and his or her assigns holding such policy, shall be entitled to a scrip certificate of stock to the amount of the payment so by him or her made, and the said stock shall be entitled to dividends in all cases where the policy upon which it shall be paid is entitled to participate in the profits of the company; but no dividends shall be made payable so as to trench upon or reduce the amount of such capital stock at any time.

*Section 2.* It is hereby further ordained and declared, that on the termination of any policy of assurance by the death of the person whose life is

---

* *Rev.,* p. 6153, §§ 67, 68, 69.    † *Rev.,* p. 1172, § 147.

or shall be assured, the capital stock belonging to the holder of such policy shall cease and determine, and such holder or his or her legal representatives, shall receive the amount of such capital as a part of the amount assured by said policy; and on the determination of any policy by forfeiture, the capital stock belonging to the holder of such policy shall also cease and determine, and the amount of such capital shall be likewise forfeited and pass into the general funds of the company.

*Section* 3. It is further ordained and declared, that so much of the thirty-fifth by-law as required the amount of $200,000, in addition to the reserve fund to be retained and kept by the company be, and the same is hereby repealed, the same being superseded by the capital stock hereby created.